# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JAMES H.P.,<br><br>                    Petitioner,<br><br>v.<br><br>LIZZIE TEGELS, Warden, New Lisbon Correctional Institution,<br><br>                    Respondent. | Case No. 11-CV-341-JPS<br><br><br><br>**ORDER** |

On April 11, 2011, petitioner James H.P. filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, James H.P. challenges a prior state court conviction for repeated sexual assault of the same child while as a person responsible for the child's welfare, in violation of Wis. Stat. § 948.025(1), for which he is now serving a thirty-five year sentence consisting of twenty years of initial confinement and fifteen years of extended supervision. In his petition, James H.P. argues that his constitutional due process rights have been violated. Specifically, petitioner contends evidence was withheld from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The evidence in question is the prosecutor's private meeting with the 15-year-old victim where the prosecutor allegedly coerced the victim into retracting multiple recantations and renewing her allegedly false accusations at trial. For the reasons stated below, the court is obliged to deny the petition.

**1.    Background**

In May of 2003, R.P. – the victim in this case – spoke with a school social worker and first made allegations accusing her father of repeated

sexual assaults. Subsequently, the State of Wisconsin charged James H.P. with two counts of repeated sexual assault of his daughter. In August of 2003, both the victim and her brother met with the Assistant District Attorney and asked that the case against their father be dropped. In a letter received by the circuit court on November 3, 2003, the victim recanted her allegations, indicating she had lied, made the accusations "in revenge" and could not "see an innocent man go to jail [for] the rest of his life." At the April 2004 bench trial, the victim was questioned about the November 2003 recantation letter and testified that, although the letter was untrue, she wrote it after her family pressured her to do so. After the bench trial, James H.P. was convicted of one count of repeated sexual assault of R.P. and sentenced to thirty-five years imprisonment.

In a November 2007 affidavit, R.P. reasserted her recantation (from the November 2, 2003 letter) and provided information regarding her decision to withdraw her original recantation. Specifically, R.P. averred that a few days after she sent her original recantation letter to the trial court, she met privately with the prosecutor, and the prosecutor threatened her with criminal prosecution for perjury and falsifying statements to the court. The victim further attested that because she was frightened by the prosecutor's threats, she withdrew her recantation and testified against her father. At a hearing on James H.P.'s post-conviction motion for a new trial on grounds that he was denied ineffective assistance of counsel and that there was newly discovered evidence (regarding the prosecutor's meeting with the victim and its effect on the victim's recantation), the victim testified – consistent with her affidavit – and reasserted her November 2003 recantation and recounted her

Page 2 of 10

Case 2:11-cv-00341-JPS    Filed 07/27/12    Page 2 of 10    Document 22

November 2003 meeting with the prosecutor. With these facts in mind, the court will now consider James H.P.'s claims for relief.

**2.     Legal Standard**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, governs the grant of a writ of habeas corpus. Under § 2254(d), if a constitutional claim was adjudicated on the merits by the state courts, a federal court may only grant habeas relief based on that claim if the state court's decision is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the U.S. Supreme Court, or if the state court's determination of the facts was unreasonable in light of the evidence presented.

A state court's decision is "contrary to" federal law if the state court applied the wrong standard or decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Brown v. Finnan*, 598 F.3d 416, 421-22 (7th Cir. 2010). Moreover, a state court's decision is an unreasonable application of clearly established federal law "when a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply." *Id.* at 422. In other words, if the petitioner challenges a state court's application of governing federal law, the decision "must be shown to not only be erroneous, but objectively unreasonable." *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009) (internal citations omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes

the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").

Pursuant to 28 U.S.C. § 2254(a), the district court shall entertain an application for the writ on behalf of a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The conditions set forth in § 2254(a) are satisfied when the district court concludes there has been a violation of federal law and that the violation played a causal role in the state prisoner's custody. *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). When the court considers whether the conditions set forth in § 2254(a) are satisfied, the court is required under the AEDPA to review the state court's adjudication on the merits deferentially and set the state court decision aside only if the court committed unreasonable error. *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). Findings of fact made by the state courts are presumed correct and are rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000).

**3.     Discussion**

Here, though James H.P. asserts three claims for relief in his petition, these claims overlap and essentially boil down to one due process claim based on a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[1] That is, the petitioner asserts the prosecution withheld favorable and material evidence – namely, the state prosecutor's private meeting with the victim in which the

---

[1]In *Brady v. Maryland*, 373 U.S. 83, the Supreme Court held that constitutional due process requires the government to disclose favorable evidence to criminal defendants.

prosecutor allegedly coerced the victim into repeating accusations that the victim had previously recanted – thus, entitling James H.P. to a new trial.

Here, the state circuit court did not specifically address James H.P.'s *Brady* claim, as he did not raise it as such in his post-conviction motion.[2] Instead, he raised the claim as a newly discovered evidence claim, and that is how the state circuit court – in its decision on James H.P.'s post-conviction motion – addressed the issue. As an initial matter, James H.P. argues that the state circuit court's factual decisions relating to the newly discovered evidence claim were all based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

When it comes to state court factual findings, AEDPA has two separate provisions. First, § 2254(d)(2) authorizes federal courts to grant habeas relief in cases where the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In other words, a federal court may not second-guess a state court's fact-finding process unless – after review of the state court record – it determines that the state court was not merely wrong, but actually unreasonable. *Cf. Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) ("The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable."). Second, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall

---

[2]This fact alone raises the question of whether James H.P. procedurally defaulted the *Brady* claim. However, for purposes of this order, the court will assume he did not procedurally default the claim.

be presumed to be correct," and that this presumption of correctness may be rebutted only by "clear and convincing evidence."

Here, the petitioner argues that the state court unreasonably found the prosecutor did not coerce or intimidate the victim into retracting her recantation in the November 2003 meeting. Specifically, James H.P. contends that the victim's affidavit and post-conviction hearing testimony establish that the prosecutor bullied the victim into testifying at trial that her recantation letter was not true. However, a review of the record and the circuit court's reasoned credibility finding establish otherwise. For instance, the circuit court deemed James H.P.'s claims of coercion implausible, noting that R.P. testified at trial that the prosecutor told her "I just want you to tell the truth." (Docket #12, Ex. 5 at 5). Moreover, the circuit court stated that it had considered the "trustworthiness of both the recantation and its repudiation," finding "the recantation to be untrustworthy and the original statement with its detail and its affirmance at trial to be persuasive." (*Id*. at 6). As support for discounting R.P.'s post-trial recantation testimony, the court further explained that this later testimony was "done in the context of her having been ostracized by the entire family, who again appeared in great numbers." (*Id*. at 4). The court also questioned R.P.'s claim that she met with the prosecutor alone, explaining that this was "difficult to believe" because "other staff are usually present during such interviews." (*Id*. at 5). Ultimately, the circuit court concluded that, if such a meeting did occur, it was more likely that the prosecutor merely explained the consequences of lying to the victim, rather than intimidated her into repudiating her recantation. (*Id*. at 6). Accordingly, the court determined that R.P.'s trial testimony was more

credible than her post-trial hearing testimony and affidavit, and thus the court found the prosecutor never coerced or intimidated the victim.

This factual determination is not unreasonable based on the record of the state court proceedings. The state circuit court was in a unique position to determine the credibility of R.P.'s divergent statements, and its reasoning for finding R.P.'s trial testimony more convincing than her post-trial testimony is sound. Indeed, James H.P. has failed to rebut – by way of clear and convincing evidence – the presumption of correctness owed to the state court's credibility determination. The petitioner simply asks this court to find that the victim's post-trial testimony was more credible than her trial testimony. The court is not in a position to overturn the state court's credibility determination for the sole and unsubstantiated reason that it might be wrong. The AEDPA standard requires something more – unreasonableness. As James H.P. has come forward with no evidence tending to show the objective unreasonableness of the state court's credibility determination, this court declines to disturb the state court's determination that the prosecutor never intimidated or coerced the victim into repudiating her recantation at trial.[3] The court's finding in this respect is fatal to James

---

[3]Though the Wisconsin Court of Appeals never made any specific findings concerning James H.P.'s allegations of prosecutorial coercion, it expressed support for the circuit court's factual findings in its rejection of the petitioner's newly discovered evidence claim. For instance, the court of appeals noted that the circuit court was aware that the victim had made the allegations, recanted and then withdrew the recantation. The appellate court further noted that the victim testified at trial about family pressure to recant and that her claimed motive for fabricating the allegations was dubious especially in light of her detailed account of the assaults – details corroborated in several respects by James H.P.'s own confession. The Wisconsin Court of Appeals then explained that it agreed with the circuit court's conclusion that the victim's new assertion – which lacked any explanation – would not be believed by a new fact finder.

H.P.'s entire petition because, if no intimidation or coercion occurred on behalf of the state prosecutor, then no "newly discovered evidence" actually exists, and thus no *Brady* violation could have occurred.

However, even reaching the merits of James H.P.'s *Brady* claim, this court finds that he would not be entitled to federal habeas relief. To receive a new trial based on a *Brady* violation, a defendant must show: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defendant; and (3) that it is material to an issue at trial. *See United States v. Daniel*, 576 F.3d 772, 774 (7th Cir. 2009). "Favorable" evidence includes exculpatory substantive evidence, as well as evidence with impeachment value. *United States v. Bagley,* 473 U.S. 667, 682 (1985). Evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

The Wisconsin Court of Appeals rejected James H.P.'s *Brady* claim, noting that even if it were to assume that the November 2003 meeting between the victim and the prosecutor was categorized as exculpatory evidence, *Brady* only requires the state to turn over exculpatory information in its exclusive possession. Here, the court reasoned that James H.P. could have learned about the information by questioning the witnesses. Because the petitioner had the opportunity to cross-examine the victim about her decision to withdraw the original recantation, the court of appeals found that no *Brady* violation occurred.

James H.P. gives no explanation for why the Wisconsin Court of Appeals's decision in this respect is an unreasonable application of clearly established federal law. Instead, he spends the entirety of his brief in support of his petition arguing how disclosure of the alleged prosecutorial coercion

Page 8 of 10

Case 2:11-cv-00341-JPS    Filed 07/27/12    Page 8 of 10    Document 22

would have been favorable and material to his defense, never touching upon the fact that he had every opportunity to cross-examine the victim regarding why she chose to withdraw her original recantation and testify against the petitioner. This court finds that the Wisconsin Court of Appeals carefully considered the claims of prosecutorial misconduct within the context of James H.P.'s *Brady* violation claim and that the court's decision on these issues was not contrary to, or an unreasonable application of, clearly established law. 28 U.S.C. § 2254(d). Accordingly, James H.P. is not entitled to federal habeas relief.

Finally, in accordance with Rule 11 of the Rules Governing Section 2254 Cases as amended, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the application." "A certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court concludes that the petitioner has failed to make this requisite showing that his constitutional rights were denied. Therefore, the court will deny a certificate of appealability as to the petitioner's claims.

Accordingly,

**IT IS ORDERED** that the petitioner's "Petition for Writ of Habeas Corpus" (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to the petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of July, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Page 10 of 10

Case 2:11-cv-00341-JPS   Filed 07/27/12   Page 10 of 10   Document 22